FILED

**ANTHONY OLIVER, GSB TBD**
6320 Canoga Avenue, Suite # 1500
Woodland Hills, California 91367
Telephone: (818) 227-5124
Facsimile: (818) 227-5004

2015 OCT -5 PM 1:12
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

I/S 21 days

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANTHONY OLIVER, an individual,

Plaintiff,

vs.

COUNTY OF LOS ANGELES, a public entity; GERALD HOUSTON, individual and official capacity; BARBARA TORRES, individual and official capacity; CITY OF OCEANSIDE, public entity; MATTHEW LYONS, individual and official capacity: JOHN MULLEN, individual and official capacity; DEBORAH NASH, individual and official capacity; ERIK HUGHES, an individual and official capacity; CYNTHIA LYONS, individual and official capacity; and DOES 1 through 10, inclusive.

Defendants.

CV15-7791-SJO (KK)

**PLAINTIFFS COMPLAINT FOR DAMAGES**

**42 U.S.C. § 1983**

**DEMAND FOR JURY TRIAL**

PAID
OCT -5 2015
Clerk, US District Court
COURT 4612

///

///

///

# I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Anthony Oliver, (hereafter "Mr. Oliver or Plaintiff") is an adult, United States citizen, over the age of 18 years old, will be mentioned herein at all times and residing in the County of Los Angeles, State of California.

2. Defendant County of Los Angeles (hereafter "County") is a public entity organized and existing under the laws of the State of California. Defendant operates the Los Angeles County Sheriff's Department and is a public entity within the meaning of California law, and is a County agency. These Defendants are sued in their own right for a County and/or LASD policy, practice or custom that caused Plaintiffs' injuries in violation of one or more State and federal constitutional guarantees under 42 U.S.C. §1983, and on Plaintiffs' state law claims for violations of mandatory duties under California Government Code §815.6, and also the state constitutional provisions identified above and California Civil Code §52.1.

3. All individual defendants are named based on personal involvement and/or supervisorial liability for their role in the constitutional deprivations alleged herein, including but not limited to their establishment, setting in motion, failing to terminate, ratification, implementation, institution, and/or execution of the discriminatory actions, policies, practices and customs. Some Defendants were/are acting under color of State law and in concert with State actors.

4. Defendant Gerald Houston (hereafter "Dep. Houston") is a Deputy Sheriff assigned to the Stanley Mosk Courthouse and tasked with providing safety and security to Judicial Officers. He is sued in his individual capacity for both damages under California law.

5. Defendant Barbara Torres (hereafter "Inv. Torres") is a forensic expert and serves as an independent contractor with the County of Los Angeles and the Sheriff's Department. Inv. Torres is sued in her individual capacity for damages under California law.

6. Defendant City of Oceanside, (hereafter "City") is a public entity existing under the laws of the State of California. At all times relevant, the City used countless funds to represent the Lyons.

7. Defendant Matthew Lyons (hereafter "Off. Lyons") is a Police Officer currently employed with the City of Oceanside. He was once a Defendant to a civil action filed in Los Angeles County Superior Court. He is sued in his individual capacity for damages under California.

8. Defendant Cynthia Lyons (hereafter "Ms. Lyons") is the spouse of Off. Lyons. At all times relevant, Ms. Lyons was acting under the color of State law and in concert with State actors. She was once a Defendant to a civil action filed in Los Angeles County Superior Court. She is sued in his individual capacity for damages under California.

9. Defendant John Mullen (hereafter "Mr. Mullen") is the City Attorney for the City of Oceanside. Mr. Mullen directly authorized the use of city funds and authorized legal representation for Off. Lyons and Ms. Lyons. Further, Mr. Mullen actively assisted in the arrest and detention of the Plaintiff in this case. In addition, Mr. Mullen also filed false declarations with the Court. He is sued in his individual capacity for damages under California law.

10. Defendant Deborah Nash (hereafter "Ms. Nash") is a deputy City Attorney for the City of Oceanside. Ms. Nash directly participated in the use of city funds and authorized legal representation for Off. Lyons and Ms. Lyons. Further, Ms. Lyons contacted Plaintiffs parole officer, fabricated evidence and actively assisted in the arrest and detention of the Plaintiff in this case. She is sued in his individual capacity for damages under California law.

11. Defendant Erik Hughes (hereafter "Mr. Hughes") is a California process server and agreed to serve the Defendants in this case. He was acting under the color of State law and in concert with State actors. Mr. Hughes through the City of Oceanside used City resources and finances to avoid paying filing fees. Further,

at the direction of the City attorneys, Mr. Hughes signed and filed several false court documents and provided perjured testimony for the Defendants after he had received funds for doing so. At all times, Mr. Hughes was acting under color of State law and in concert with State actors. He is sued in his individual capacity for damages under California.

12. All Defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference toward, Plaintiffs' rights. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint, and of one or more does true names and capacities, when ascertained. Upon information and belief, Plaintiff further alleges that, Defendants have participated in, approved, and/or ratified the unconstitutional or illegal acts which are complained of herein.

13. Plaintiff is informed and believes, and thereupon alleges that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers and were acting at all times within the scope of their agency and said employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

14. On or about June to September of 2014, Plaintiff filed a California Government Tort Claim with the City of Oceanside, County of Los Angeles, and the State of California under California Government Code 910. Each of the claims were rejected and/or denied.

15. This Court has jurisdiction over the subject matter of this Complaint because the Plaintiff was arrested and confined in the County of Los Angeles, State of California.

16. Venue is therefore proper because a substantial amount of conduct that is fully complained of herein, occurred in the County of Los Angeles.

## II. GENERAL ALLEGATIONS

17. Plaintiff Anthony Oliver, hereinafter ("Mr. Oliver or Plaintiff"), brings this Complaint against several Defendants County of Los Angeles, and several of their co-Defendants for the intentional disregard of the civil rights of the Plaintiff for recklessly and intentionally fabricating evidence when the Defendants knew, and had reason to know that Plaintiff never committed the crime of forgery of some judicial documents. In fact, it was a crime that the Defendants, and each of them knew never even happened. In the summer of 2012, Defendants Matthew Lyons and Cynthia Lyons, (hereafter "the Lyons") had Plaintiff arrested and confined in the Los Angeles County Jail for once again, a crime they said took place, but did not. The Defendants insist upon using Plaintiffs parole status at the whim and caprice to have Plaintiff arrested whenever they fell as such. Prior to the summer arrest, Plaintiff and the Lyons lived several miles from one another in Temecula, California. Mr. Lyons insists to this day that Plaintiff had an affair with his wife Cynthia Lyons.

18. Once the Lyons had Plaintiff arrested for allegedly stalking them, the Lyons were served with a subpoena to appear at a criminal hearing, but they failed and/or refused to come and testify. It was because they knew it was a crime that was never committed or even took place. Once charges were dismissed for the Lyons failure to appear in Court, Plaintiff filed a lawsuit against the Lyons for false arrest and imprisonment. Thereafter, Plaintiff hired California process server Mr. Erik Hughes, (hereafter "Mr. Hughes") to serve the Defendants. Mr. Hughes went ahead and served the Lyons and Plaintiff and Mr. Hughes agreed that the Plaintiff would pay Mr. Hughes later. With months passing by, no response pleading was ever filed by the Lyons. Therefore Plaintiff properly filed for entry of default. Once the prove up hearing was set, is when the Lyons allege they first became known of this lawsuit. Although Defendant Mr. Hughes signed and forwarded to Plaintiff two proof of services reflecting service upon the Lyons. Mr. Hughes then asked to be

paid by Mr. Oliver for the two services on Off. Lyons and Ms. Lyons, Plaintiff refused payment for other reasons. Mr. Hughes then threatened Plaintiff with a small claims action.

19. After default was entered, Oceanside City attorneys and Defendants Deborah Nash, (hereafter "Nash") and John Mullen, (hereafter "Mullen") then telephoned Plaintiff requesting that the default be set aside. Plaintiff flatly rejected their request. Defendants Nash and Mullen then threatened Plaintiff by contacting his parole agent. When Plaintiff failed to voluntarily set aside the default, Nash and Mullen then contacted California parole agent Anthony Del Real and informed him that Plaintiff is in violation of his parole and would be providing State parole with evidence.

20. Days later, Nash, Mullen, Off. Lyons and Ms. Lyons contacted the process server Mr. Hughes and inquired about the service of process. Upon formal information and belief, Ms. Nash and Mr. Mullen asked Mr. Hughes if he could knowingly, willingly and intentionally signed a false declaration that Mr. Hughes never conduct the service on the Lyons, and that Plaintiff signed Mr. Hughes' name on the judicial council forms. Mr. Hughes agreed to do so based on one of the many reasons including that Plaintiff never paid Mr. Hughes for the service. Additionally, upon information and belief, Plaintiff alleges that the City of Oceanside provided funds to Mr. Hughes for doing so.

21. Thereafter, Mr. Mullen and Ms. Nash emailed Mr. Hughes a pre typed declaration that was put together by Mr. Mullen and Ms. Nash stating the above allegations, and Mr. Hughes agreed to sign the document. Acting under color of state law, and in concert with State actors, Mr. Hughes with the permission of the City, Mr. Mullen, and Ms. Nash, used the City attorney's name, address, and phone number of the declaration. Additionally, City, Nash, and Mullen allowed Hughes to type "exempt per Gov. Code § 6103." Once the fraudulent documents were put together with City, Nash, Mullen, and Hughes, Defendant Hughes then went to the

Stanley Mosk Courthouse and filed the false documents with the Clerk of the Court and Hughes further duped the clerk into believing that Hughes was a government employee and therefore no filing fee was paid by Mr. Hughes. Thereafter, Hughes admittedly forwarded a conformed copy of the false declaration to City, Nash, and Mullen who then in turn filed the declaration as exhibits with their own set of false declarations.

22. During the course of the civil lawsuit, Defendants City, Nash, and Mullen instructed Off. Lyons and Ms. Lyons sign and return substitution of counsel judicial council forms whereas the City, Mullen, and Nash would be filing notices of appearances to defend the Lyons. Defendant Mullen directly authorized the representation by the City for Off. Lyons, and Ms. Lyons. Acting under color of State law, and in concert with one another, both Off. Lyons and Ms. Lyons signed the substitutions and the City, Mullen, and Nash filed, among other things, the documents with the Los Angeles County Superior Court. In addition, City, Mullen, and Nash ratified and approved paying the filing fee of $ 435.00 for Defendant Ms. Lyons. The filing fee was paid by the City of Oceanside.

23. With the false declaration in hand, the Defendants, and each of them gave Plaintiff the opportunity once more to set aside the default. Defendants City, Nash and Mullen were convinced that Plaintiff forged Mr. Hughes name and were prepared to contact Plaintiffs parole agent. Plaintiff contacted Mullen and Nash and Plaintiff even provided proofs of services from other civil cases that Mr. Hughes signed. Once Plaintiff obtained them, Plaintiff forward via fax the proofs and at all times, Defendants City, Nash, and Mullen knew and had reason to know the two signatures on the proof of services for the Lyons were nothing but natural. In fact, Hughes even admitted to the City attorneys that he and Plaintiff had a business deal go sour. But yet, City, Mullen, and Nash negligently relied on Mr. Hughes and his false declarations that were prepared by Mullen and Nash.

24. With the false declaration in hand, and lies in the other, City, Nash and Mullen contacted California parole agent Anthony Del Real and faxed over the alleged false documents and demanded Plaintiffs arrest. Knowing Plaintiff would never voluntarily set aside the default, Defendants had Plaintiff placed under arrest through California State parole. This was not the first time they used parole. It was not the second time the Defendants called and used parole. It was now the third time the Defendants have contacted Plaintiffs parole agent to instigate a baseless arrest and detention.

25. On March 27, 2014, Plaintiff was interview by parole agents and then informed Plaintiff the nature of the alleged false proof of services. Plaintiff denied any criminal wrong doing. In fact, when Mullen and Nash faxed over the alleged false proofs of services, if left doubt in the minds of parole agents due to the fact that the signatures were identical. Further, Plaintiffs parole agent Anthony Del Real contacted an investigator who told him [Del Real] that the signatures appear to be genuine. Plaintiff was informed that City, Mullen, Nash, Off. Lyons, Ms. Lyons, and Mr. Hughes were all interviewed by parole agent and supervisors and the call was made and Plaintiff was placed under arrest by State parole. Plaintiff was then transported to Los Angeles County Jail. Plaintiff was booked in suspicion of an alleged parole violation. At all times, Plaintiff was held without bail. At all times relevant, the Defendants City, Mullen, Nash, Off. Lyons, Ms. Lyons and Hughes lacked any probable cause whatsoever to arrest and incarcerate Plaintiff. All the Defendants had from the beginning to the end was Mr. Hughes false declaration.

26. Without the slightest bit of evidence, parole and criminal charges were filed against the Plaintiff. Shortly thereafter, Plaintiff retained the Law Office of Mr. J. Christopher Smith and proceeded to defend the forgery allegations. Once the Defendants City, Nash, Mullen, Off. Lyons, Ms. Lyons, Mr. Hughes were informed of the parole charges, once again they failed and/or refused to appear at the parole Court to testify even though the Defendants each received a subpoena. All parole

charges were instigated by the Defendants without probable cause and were later tossed out by Los Angeles Superior Court Judge Donald S. Kennedy. All charges were terminated in Plaintiffs favor.

27. Once locked away in County jail with no bail, Plaintiff then was forced to defend against the criminal charges. In Los Angeles Superior Court, Plaintiff was charged with fraud and forgery. These charges were also instigated by Defendants City, Mullen, Nash, Off. Lyons, Ms. Lyons, and Mr. Hughes without probable cause. With Plaintiff incarcerated, not even 96 hours after Plaintiff was arrested by the Defendants, City, Nash, Mullen, Off. Lyons, Ms. Lyons and their new associate Mr. Hughes appeared via ex parte application before Judge Elia Weinbach to set aside the defaults. However, the ex parte was taken off calendar due to the facts that Plaintiffs attorney J. Christopher Smith contacted the clerk in department 92 to inform the Court of Plaintiffs arrest.

28. While the Plaintiff was incarcerated on the alleged parole and criminal charges, Plaintiff tried extensively to utilize the law library at the Los Angeles Jail but was unsuccessful in many attempts. Plaintiff was informed by several deputies at the jail that Plaintiff needed a Court order to utilize the law library or be a pro per criminal Defendant. Plaintiff had neither. The Defendants, and each of them that with Plaintiff in jail on fraudulent charges that Plaintiff would not be able to pursue the civil case against Matthew and Cynthia Lyons.

29. During the course of the criminal proceedings, Plaintiff once more demanded a jury trial. Plaintiff obtained counsel through the public defender. Mr. John B. Perronni, III, SBN # 245681 defended Plaintiff. Prior to the preliminary hearing of Plaintiff, Mr. Perronni worked diligently to preserve the original proof of services that were filed at Stanley Mosk Courthouse. Mr. Perronni obtained a Court order that the documents be place into Sheriff's department evidence. Once secure, Plaintiff and his counsel hired Ms. Sheila R. Lowe and handwriting forensic expert who is by all accounts, at the top of the lists for experts and even appointed by the

Judges of the Los Angeles Superior Court. Once retained, Ms. Lowe went to the Stanley Mosk Courthouse with her forensic equipment and obtained the original proof of services in Los Angeles Superior Court Case # BC517652. Thereafter, Ms. Lowe then placed each of the proof of services on a desk top, activated illuminated lights and took digital pictures of the documents. Specifically, Ms. Lowe focused in on the original signatures of the aforementioned proofs that Mr. Hughes signed. Also in the Court file were other judicial council forms that Mr. Hughes signed.

30. With the two set of signatures, Ms. Lowe stored them on her forensic computer. Days later and prior to the Plaintiffs preliminary hearing, Ms. Lowe opined in her report that the signatures were nothing but genuine. As a matter of fact, Ms. Lowe also put together a comprehensive report that the strokes in each of Mr. Hughes' signatures, lacked the presence of forgery, and Ms. Lowe also put together a power point presentation that showed Mr. Hughes was the only person who signed the proofs of services. As such, Plaintiff proved that scientific evidence showed that Plaintiff never committed a crime, that a crime never took place, the Defendants City, Nash, Mullen, Off. Lyons, and Ms. Lyons had no probable cause to arrest and incarcerate the Plaintiff.

31. Shortly after Plaintiff and his counsel turned over the expert report by Ms. Lowe to Deputy District attorney Jacques Garden (hereafter "Mr. Garden") then obtained Los Angeles County Sheriff's Deputy, Gerald Houston, (hereafter "Dep. Houston") to investigate this case. Dep. Houston is assigned to the Stanley Mosk Court house and has no detective experience. Dep. Houston then contacted Mr. Hughes to inquire about obtaining exemplar signatures. Dep. Houston arranged to meet Mr. Hughes at a coffee shop in Victorville, California. Dep. Houston then admittedly drove to Victorville to drop off blank paper, instructed Mr. Hughes to write out his name 100 times, and mail back the samples. Mr. Hughes did just that. At no time, did Dep. Houston see who signed the alleged samples. Once the samples were mailed to Dep. Houston, none of the alleged exemplars matched the

signatures that Mr. Hughes admitted to signing and already on file. The Defendants knew or had reason to know the investigative techniques used by Dep. Houston could have been fabricated because nobody saw Mr. Hughes sign the pieces of paper. It wasn't until after Plaintiff was arrested and incarcerated, proved innocent, did Dep. Houston and the County of Los Angeles, (hereafter ("County") do anything to examine evidence, retain investigators, or interview witnesses. That means that Dep. Houston and County lacked probable cause to arrest, charge, and arraign Plaintiff on forgery charges.

32. With the alleged exemplars that Mr. Hughes mailed to Dep. Houston, Dep. Houston and County then retained their own handwriting expert. Investigator Barbara Torres, (hereafter "Inv. Torres") then obtained the alleged exemplars and then contacted Plaintiffs expert Ms. Sheila Lowe, who together went to the Stanley Mosk Courthouse and examined the signatures together. With Plaintiffs preliminary hearing approaching, Inv. Torres had to act fast to turn over her investigative report.

33. Weeks later, after several experts retained, countless tax payer dollars spent, Plaintiff spending months incarcerated, and the Defendants celebrating, Inv. Torres opined and filed her expert report. The results were staggering. Inv. Torres ruled that the exemplars from Mr. Hughes were inconclusive as to the Plaintiff. Meaning that Plaintiff was excluded from committing any crime whatsoever and that the alleged crime could not even be proven by the preponderance of evidence or beyond a reasonable doubt. At no time did any of the Defendants move to free the Plaintiff from custody. Much less come forward with the truth.

34. With the Defendants now exposed that they even lacked the bit most probable cause to arrest and incarcerate Plaintiff, they had no choice in the matter to admit there faults and Inv. Torres turned her report over to the district attorney. However, at no time did Inv. Torres ever provide Plaintiffs' counsel with her report until a later time.

35. On July 7, 2014, Plaintiff appeared for a preliminary hearing. Dep. Houston testified only to other non-relevant stuff. But insisted that Plaintiff had committed forgery. Plaintiff's forensic expert then testified stating that it was only Mr. Hughes who signed the documents. Additionally, handwriting experts are able to determine many things about writers. Such as whether the person is male or female, how much the writer weighs, what hand the person writes with, whether the person is an adult or child. Ironically enough, Ms. Lowe testified that she never met Mr. Hughes or Mr. Oliver. As a result of her testimony, Ms. Lowe testified, among other things that the writer is right handed, the writer weighs over 240 pounds, is a male, and is an adult. Coincidentally, Mr. Hughes is all the above.

36. After the testimony of Ms. Lowe, Mr. Hughes testified. He was then cross examined by Plaintiff's counsel. When asked if he seen Plaintiff signed Mr. Hughes' name to the documents, Mr. Hughes stated: "no I did not." [Emphasis in original]. When asked if Mr. Hughes' signed the proofs of services, he made the same statement. When asked how Mr. Hughes' knew that Plaintiff signed his name on the documents, he stated; "because my name is misspelled. It's with a "K" on the end, and the form shows a "C," I know how to spell my own name. [Emphasis in original]. Coincidentally enough, Mr. Hughes' admitted during the hearing that he signed other proofs of services for Plaintiffs attorney in a personal injury case. The proofs of services in that case were admitted into evidence and show a "C" also in lieu of a "K."

37. As a direct and proximate result of the fabricate police investigation, testimony, and evidence, Plaintiff was held to answer. Plaintiff remained in custody and at no time did County, Inv. Torres, or Dep. Houston ever turn over Torres' report in time for the preliminary hearing. Had they done so, the outcome of the preliminary hearing could have favored Plaintiff. Again weeks turned into months. The district attorneys case was so flawed, that DDA Jacques Garden offered the Plaintiff time served which by accounts was flatly rejected.

38. With the criminal trial set and the Plaintiff remained optimistic that justice would prevail. Plaintiff and his counsel were prepared to proceed to trial to defend the false allegations. However, with the inconclusive investigative report by Inv. Torres, the fabricated evidence in hand by City, Mullen Nash, Off. Lyons, Ms. Lyons, and Mr. Hughes, the perjured testimony by Dep. Houston and Mr. Hughes, the slightest bit of physical or forensic evidence, and with no witnesses, the district attorney was faced with no choice but to dismiss all charges against Plaintiff. But prior to the dismissal of the charges, the Defendants and each of them knew and had reason to know that Plaintiff was innocent based mostly on their own reports from their own investigators. However, the County and Houston breach the duty owed to Plaintiff to not leave the Plaintiff incarcerated months at a time, breached that duty, causing Plaintiff to spend 13 months in jail for a crime that was never committed. At all times relevant, the County and Houston failed to free the Plaintiff from jail, but either failed or refused to do so. The County and Houston pinned their hopes that they would come up with something or anything to justify their continued detention of the Plaintiff. With Plaintiff locked away incarcerated, the Defendants just assumed that the Plaintiff would just accept a plea agreement and move on.

39. As a result of the injury sustained by Plaintiff, the Defendants and each of them did nothing to free Plaintiff from incarceration. In fact, the individual civil Defendants also owed a duty to Plaintiff to move to free him and thus Defendants Cynthia Lyons and Erik Hughes breached that duty causing Plaintiff unwanted jail time and emotional distress.

40. On April 8, 2015, Plaintiff Anthony Oliver appeared in Los Angeles County Superior Court before the Honorable James Brandlin. The charges were formally dismissed against the Plaintiff, and because the district attorney dismissed the charges once before, this was the final dismissal and dismissed in Plaintiff's favor. The Plaintiff was therefore ordered released. Owning nothing but the shirt on

his back, the pants on his legs, Plaintiff walked out of the Los Angeles County Jail a free person. After spending 13 months behind bars for a crime that never took place, the Plaintiff lost custody of his children, also lost everything in his home, spending thousands of dollars to defend himself and also suffering from severe emotional distress, Plaintiff was returned to society. All while the Defendants, and each of them celebrated. With Plaintiff in custody and out of the way, the twenty million dollar default that the Plaintiff once had obtained was now set aside. The Defendants, City, Mullen, Nash, Off. Lyons, Ms. Lyons and Mr. Hughes knew the only to get the default set aside was to frame Plaintiff for a crime and have him arrested for a crime that came hardly close to taking place.

41. On information and belief, Plaintiff believes and thereon alleges that the Defendants, City, Mullen, Nash, Off. Lyons, Ms. Lyons effectuated a baseless arrest of the Plaintiff to set aside the default, not because an alleged crime took place. All charges stemming from the criminal prosecution were intentional, also reckless, without probable cause and with complete disregard for the rights of the Plaintiff. Thus entitling the Plaintiff to award of punitive damages.

42. Further, the criminal charges against the Plaintiff were terminated in his favor. Due to the malicious prosecution of the Plaintiff, he suffers, continues to suffer and will suffer so long as he may live. In addition to other damages, Plaintiff is entitled to an award of punitive damages pursuant to California Code of Civil Procedure § 3294.

**FIRST CAUSE OF ACTION**

**False Arrest / False Imprisonment**

**Under California State Law**

**(Against all Defendants and DOES 1-10)**

43. The allegations contained in all said paragraphs 1 - 42, inclusive, are hereby incorporated by reference.

44. As complained herein, Plaintiff was arrested by the Defendants at their whim of caprice using Plaintiffs parole status. The Defendants arrested Plaintiff without a warrant, without his consent, and without probable cause. Moreover, as shown above, Plaintiff was unlawfully imprisoned at the Los Angeles County Jail by Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, and Inv. Torres.

45. Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres did not have probable cause (or even reasonable suspicion) to have believed that Plaintiff had committed a crime. Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres restrained the Plaintiff and deprived Plaintiff of his liberty.

46. Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres intentionally deprived Plaintiff of his freedom of any movement by the use of physical force and violence and/or the threat thereof.

47. Plaintiff did not consent to the deprivation of his freedom or of any movement by said Defendants, or to the violence committed upon him.

48. Plaintiff suffered harm because of the deprivation of his freedom of movement by Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres.

49. The actions committed by Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres not only constituted a false arrest and false imprisonment of the Plaintiff in violation of the Penal Code and under California state law.

50. Said Defendants, Mullen, Nash, Off. Lyons, Dep. Houston and Inv. Torres are liable to Plaintiff for said false arrest and imprisonment pursuant to California Government Code §§ 815.2(a), 815.6, 820, 820.2, 820.4, 820.8, and otherwise pursuant to the common-law.

51. The actions committed by Defendants City, Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, County, Dep. Houston, Inv. Torres and DOES 1 through 10, as complained of herein, proximately caused Plaintiff to suffer substantial physical injuries, severe physical mental and emotional distress and suffering medical bills, costs and expenses to defend himself, in an amount to be proven at trial.

52. The actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10, were committed maliciously, oppressively and constituted despicable conduct sufficient for an award of punitive and exemplary damages against all Defendants and each of them, save Defendants CITY and COUNTY in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**Negligence**

**Under California State Law**

**(Against all Defendants and DOES 1-10)**

53. The allegations contained in all said paragraphs 1 - 52, inclusive, are hereby incorporated by reference.

54. As shown above, Plaintiff was in acute distress when the Defendants, and each of them, negligently relied on false Court documents and declarations to falsely arrest and unlawfully incarcerate the Plaintiff.

55. Moreover, Defendants had a duty to use due diligence and care in their investigation of Mr. Hughes prior to having Plaintiff arrested. Defendants breached said duty of care by negligently arresting, as well as negligently unlawfully having the Plaintiff incarcerated for 13 months.

56. Accordingly, the actions committed by Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres constituted breach of Defendants duty to use due care toward Plaintiff under California State Law; said

breach of duty resulting great physical, mental and emotional distress, pain and suffering to Plaintiff.

57. As a direct as proximate result of the actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10 inclusive, as complained of herein, Plaintiff: 1) was substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, and; 3) incurred other special and general damages and expenses in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**Violation of the Bane Act - California Code of Civil Procedure § 52.1**

**Under California State Law**

**(Against all Individual Defendants and DOES 1-10)**

58. The allegations contained in all said paragraphs 1 - 57, inclusive, are hereby incorporated by reference.

59. The actions of the Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston and Inv. Torres and DOES 1 – 10, inclusive, as fully complained of herein, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise and/or enjoyment by Plaintiff of the rights secured to him by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Code of Civil Procedure § 52.1; including and especially, the false arrest / false imprisonment of the Plaintiff.

60. Said Defendants are liable to Plaintiff for said violations of their Constitutional rights, pursuant to California Civil Code § 52.1, and California Government Code §§ 815.2(a), 815.6, 820, 820.8.

61. As a direct as proximate result of the actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES

1-10 inclusive, as complained of herein, Plaintiff: 1) was substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, and; 3) incurred other special and general damages and expenses in an amount to be proven at trial.

62. The actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10, were committed maliciously, oppressively, and intentionally and constituted despicable conduct sufficient for an award of punitive and exemplary damages against all individual Defendants and each of them, save Defendants CITY and COUNTY in an amount to be proven at trial.

63. In addition, as a result of the actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10, inclusive, as complained of herein, constituted a violation of California Civil Code § 52.1 and therefore, Plaintiff is entitle to an award of treble compensatory damages against all individual Defendants, and each of them.

## FOURTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

**Under California State Law**

**(Against all Defendants and DOES 1-10)**

64. The allegations contained in all said paragraphs 1 - 63, inclusive, are hereby incorporated by reference.

65. Defendants Mullen, Nash, City, Off. Lyons, Ms. Lyons, Mr. Hughes, County, Dep. Houston, Inv. Torres and DOES 1-10, inclusive, knew and/or should have known that Plaintiff was susceptible to suffering severe emotional distress from the actions taken and committed against Plaintiff as complained of herein.

66. The actions committed by Defendants Mullen, Nash, City, Off. Lyons, Ms. Lyons, Mr. Hughes, County, Dep. Houston, Inv. Torres and DOES 1-10,

inclusive, as complained herein, were malicious, oppressive, and/or in reckless disregard for Plaintiffs constitutional rights, was despicable and of such outrageous nature as to be shocking to the conscience.

67. The actions of Defendants Mullen, Nash, City, Off. Lyons, Ms. Lyons, Mr. Hughes, County, Dep. Houston, Inv. Torres and DOES 1-10, inclusive, as complained of herein, committed against Plaintiff, directly and proximately caused Plaintiff to suffer severe emotional distress.

68. Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10, inclusive, and each of them, are liable to the Plaintiff for said intentional infliction of emotional distress pursuant to California state law, and otherwise pursuant to the common-law.

69. As a direct as proximate result of the actions of Defendants Mullen, Nash, City, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres, County and DOES 1-10 inclusive, as complained of herein, Plaintiff: 1) was substantially physically, mentally and emotionally injured; 2) incurred medical and further psychological costs, bills and expenses, and; 3) incurred other special and general damages and expenses in an amount to be proven at trial.

70. The actions of Defendants Mullen, Nash, Off. Lyons, Ms. Lyons, Mr. Hughes, Dep. Houston, Inv. Torres and DOES 1-10, were committed maliciously, oppressively, intentionally with the intent to annoy and vex the Plaintiff, and also constituted despicable conduct sufficient for an award of punitive and exemplary damages against all individual Defendants and each of them, save Defendants CITY and COUNTY in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**Malicious Prosecution**

**Against Houston, Off. Lyons, Ms. Lyons, Nash, Mullen, Hughes and DOES 1 through 10, inclusive**

71. The allegations contained in all said paragraphs 1 through 70, inclusive are hereby incorporated by reference.

72. The conduct of the despicable Defendants and each of them, as pled herein above was within their respective scope of employment and each of the said individual private actors acting within scope of employment who wrongfully have caused the felony proceedings to be brought and prosecuted against the Plaintiff for the crime of forgery and fraud.

73. Each of the said Defendants was actively involved in causing Plaintiff to be prosecuted and causing the continuation of the prosecution and incarceration.

74. The criminal proceedings against Plaintiff for the crime of fraud and forgery ended in Plaintiff's favor. The criminal proceedings taken against Plaintiff was without probable cause.

75. No reasonable person under the circumstances would have believed that there were adequately grounds and sufficient un-contradicted facts causing the Plaintiff to be charged, incarcerated and prosecuted for the crime of fraud and also forgery.

76. Defendants and each of them, acted primarily for a purpose other than to bring Plaintiff to justice and Plaintiff was seriously harmed thereby.

77. The conduct of these Defendants and each of them was a substantial factor in causing Plaintiff harm.

78. The conduct of the Defendants and each of them was malicious, and oppressive and thus warranting the award of punitive damages against each of the Defendants.

## SIXTH CAUSE OF ACTION

### Violation of Federal Civil Rights – 42 U.S.C. § 1983

### Against All Defendants and DOES 1 through 10, inclusive

79. The allegations contained in all said paragraphs 1 through 78, inclusive are hereby incorporated by reference.

80. The Defendants, and the individual Defendants acting under color of state law, violated Plaintiffs well established rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Civil Rights act of 1871, and the laws of the State of California, by the acts alleged above.

81. Throughout their investigation, the Defendants and each of them knew or had reason to know that the results of the exemplar signatures produced by the Defendant Erik Hughes were corrupt, false, fabricated, and completely lacking in credibility. Nevertheless, the Defendants and each of them colluded during their investigation to use any evidence they knew or should have known was false, even corrupt, and fabricated to establish probable cause to effectuate the arrest and the incarceration of the Plaintiff for the crime of forgery.

82. The Defendants, and each of them, knew or should have known that the deliberate fabrication of false evidence and suppression of exculpatory evidence would result in the wrongful incarceration of Plaintiff, but they still committed the acts alleged herein. The acts violated Plaintiffs clearly established rights under the United States Constitution and federal statutory law.

83. Although the Defendants, and each of them knew that Plaintiff would be deprived of the equal protection of the laws by the intentional or negligent and fabricated evidence, along with suppression of exculpatory evidence and had the power and authority to prevent or aid Plaintiff from being wrongfully incarcerated for a crime that never took place, neglected or refused to come forward with the truth, and expose their co-Defendants conspiracy to deprive the Plaintiff of equal protection of the laws.

84. The actions described above were taken by the Defendants with malice and with the intent to vex, annoy and harass Plaintiff to inflict the severe emotional distress and physical harm, and were designed and calculated to deprive Plaintiff of his Constitutional rights to be secure against unlawfully seizure, the taking of the Plaintiffs liberty without due process of law, and equal protection of the laws, as

well as his rights under federal statutes, including 42 U.S.C. §§ 1985 and 1986.

85. As a direct and proximate result of the acts of the Defendants, Plaintiff sustained actual injuries and damages arising from the deprivation of his civil rights that includes violations of his clearly established rights under the First, Fourth, and his Fourteenth Amendments to the United States Constitution, loss of his physical liberty without due process and equal protection of the laws. These criminal acts of the Defendants caused Plaintiff pain and suffering; severe emotional distress as a result of being deprived of the love, companionship, and respect of his children, family and friends; economic damages including loss of income and paying for criminal defense costs; and humiliation, embarrassment and injury to reputation.

## SEVENTH CAUSE OF ACTION

**Violation of Federal Fourth Amendment – 42 U.S.C. § 1983**

**Against All Defendants and DOES 1 through 10, inclusive**

86. The allegations contained in all said paragraphs 1 through 85, inclusive are hereby incorporated by reference.

87. The Defendants, the individual Defendants acting under color of state law, violated Plaintiffs established rights guaranteed by the First, Fourth, and his Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and the laws of the State of California, by the acts alleged herein.

88. All Defendants, and the individual Defendants to this claims, at all times relevant, Defendants were acting under the color of state law in their capacity as City and State actors. Their acts or omissions were conducted with the scope of their duties or employment. The private actors at all times relevant were acting under the color of law.

89. At all times relevant, Plaintiff had a clearly established Constitutional right under the Fourth Amendment to be secure in his person from all unreasonable search and seizures while on parole by government officials for the purposes of

personal animosity, arbitrary, capricious, or harassing reasons.

90. At all times, Defendants lacked the bare minimal probable cause to arrest and incarcerate Plaintiff. Instead of possessing actual probable cause, the Defendants used Plaintiffs parole status at their whim of caprice to charge, arrest, and incarcerate Plaintiff. This is the third time Defendants had Plaintiff arrested and incarcerated for baseless parole arrests each time involving the City Defendants, especially Officer Matthew Lyons and Cynthia Lyons.

91. As a further and direct and proximate result of the aforesaid acts, the omissions, customs, practices, policies and decisions of the Defendants, Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain actual damages in a sum to be determined at trial.

92. The actions described above were taken by the Defendants with actual malice and with the intent to vex, annoy and harass Plaintiff, to inflict the severe emotional distress and physical harm, all of which was designed and calculated to deprive Plaintiff of his Constitutional rights to be secure against unlawful seizure, the taking of liberty without due process of law, and equal protection of the laws, as well as his rights under federal statutes.

## EIGHTH CAUSE OF ACTION

**Devereaux Violation of Federal 14th Amendment – 42 U.S.C. § 1983**

**Against Torres, Houston, Off. Lyons, Ms. Lyons, Nash, Mullen, Hughes and DOES 1 through 10, inclusive**

93. The allegations contained in all said paragraphs 1 through 92, inclusive are hereby incorporated by reference.

94. Defendants Torres, Houston, Off. Lyons, Ms. Lyons, Nash, Mullen, Hughes violated the Plaintiffs clearly established procedural due process federal Constitutional right to be free from criminal prosecution based on recklessly or the intentionally fabricated evidence, as that specific Constitutional right is explained in

Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002), and Devereaux v. Abby, 263 F.3d 1070 (9th Cir. 2001) and other controlling case law.

95. As even more alleged,

- Defendants Nash, Mullen, Off. Lyons, Ms. Lyons, Houston and Hughes falsely and intentionally reported to the Superior Court of California in false declarations intentionally prepared and filed by these Defendants, but in fact Defendants knew that the Plaintiff never signed the alleged proof of services and knowing that by preparing and filing false declarations that indicated that Plaintiff forged Erik Hughes name, and using the false declarations to have Plaintiff charged, arraigned, arrested and incarcerated would be the only way Defendants could get the twenty million dollar default set aside;

- Defendants Nash, Mullen, Off. Lyons, Ms. Lyons, Houston and Hughes reported and promoted to State Parole highly deceptive and false information that Plaintiff forged Hughes name of several proof of services in order to get the twenty million dollar default set aside, but failed to disclose to parole that Defendants had no form of evidence to support their trumped up allegations, but rather fabricated this evidence in false declarations, police reports, false parole reports along with Court reports that Plaintiff signed Hughes name when in fact no such evidence ever existed.

- Defendants Nash, Mullen, Off. Lyons, Ms. Lyons, Houston and Hughes purposely and recklessly fabricated the falsehood that there were additional proof of services on file, when in fact there was not, causing Plaintiff to be subjected to additional jail time as Plaintiff had to wait for additional forensic work to be completed; Defendants actively, vigorously and effectively used their positions to promote this falsehood in the Plaintiffs criminal case, the recommendations, the taxpayer money being spent on additional forensic work, and subsequent additional incarceration time;

96. The foregoing fabrications of false facts and evidence collectively and in some cases singly, and as made and proselytized, materially affected the felony charging recommendations and decisions made against the Plaintiff, materially affected the outcome of the preliminary hearing, and otherwise materially affected the criminal prosecution of Plaintiff. Among other things, prejudice to Plaintiff ensued from the fabrications insofar as he was forced to defend himself against the

felony fraud and forgery charges, all at great financial and emotional expense to the Plaintiff and at the Plaintiffs loss of liberty. The foregoing conduct of the individual Defendants was malicious, and oppressive, thereby justify an award of punitive damages against each of the individual Defendants pursuant to California Code of Civil Procedure § 3294.

## NINTH CAUSE OF ACTION

### Brady Violation – 42 U.S.C. § 1983

### Against All Defendants and DOES 1 through 10, inclusive

97. The allegations contained in all said paragraphs 1 through 96, inclusive are hereby incorporated by reference.

98. All Defendants violated Plaintiffs clearly established procedural due process federal Constitutional right to disclosure, before or at each critical stage of the criminal proceedings against him, or material exculpatory evidence, as that the specific Constitutional right is explained in Brady v. Maryland, 373 U.S. 83, 87 (1963), Giglio v. United States, 405 U.S. 150 (1972) United States v. Agurs, 427 U.S. 97 (1976), and United States v. Brumel-Alvarez 991 F.2d 1452 (9th Cir. 1993).

99. As even more alleged,

- Deputy Gerald Houston went to Victorville to meet Defendant Erik Hughes at a coffee shop, dropped off several pieces of blank paper, write out his name 100 times, and the Dep. Houston then instructed Defendant Hughes to mail back the exemplars to the County of Los Angeles. At no time did Dep. Houston ever disclose this information to Plaintiffs attorney.

- Defendants Houston and Torres failed to document and even timely disclose that, at the investigative stage before Plaintiffs preliminary hearing, that other proof of services existed that Defendant Hughes admitted to signing, but failed or refused to have those proofs of examined by a forensic expert.
- Defendants Houston and Torres failed to turn over to Plaintiffs attorney, the expert opinion report opined by Investigator Torres with a showing that the results were inconclusive as to the Plaintiff which clearly made a difference in Plaintiff being held to answer;

- Some knowledgeable named Defendants failed to disclose and document that (a) two sets of proof of services were in the Defendants City, Nash, Mullen, Officer Lyons, Ms. Lyons, County, Houston and Torres who knew personally that Hughes signed them and admitted to signing them, all of which was favorable to Plaintiff and (b) that those proof of services had the names of three attorneys, bar numbers, and phone numbers representing Plaintiff and that Defendant Houston contacted these attorneys and informed him that the signatures of Hughes were genuine. Plaintiff is informed and believe and thereon alleges that Defendants City, Nash, Mullen, Off. Lyons, Ms. Lyons, County, Houston and Torres were among the Defendants who learned but failed to even document this exculpatory evidence.

100. The foregoing material exculpatory evidence collectively and in some cases singly, and as made and proselytized, materially affected the felony charging recommendations and decisions made against the Plaintiff, materially affected the outcome of the preliminary hearing, and otherwise materially affected the criminal prosecution of Plaintiff. Among other things, prejudice to Plaintiff ensued from the fabrications insofar as he was forced to defend himself against the felony fraud and forgery charges, all at great financial and emotional expense to the Plaintiff and at the Plaintiffs loss of liberty. The foregoing conduct of the individual despicable Defendants was malicious, and oppressive, thereby justify an award of punitive damages against each of the individual Defendants pursuant to California Code of Civil Procedure § 3294.

///

///

///

# TENTH CAUSE OF ACTION

## Conspiracy – 42 U.S.C. § 1983

## Against All Defendants and DOES 1 through 10, inclusive

101. The allegations contained in all said paragraph 1 through 100 inclusive are hereby incorporated by reference.

102. Defendants and the other individual Defendants, and each of them, had conspired and/or recklessly aid-and-abetted one another, to cause and/or further the violation of one or more of Plaintiffs federal procedural due process rights and/or his substantive due process right to be free from malicious prosecution.

103. The individual Defendants, and each of them, acted or refrained from acting for the purpose of and in conspiratorial efforts to protect Officer Lyons and his spouse Cynthia Lyons from having to pay a twenty million dollar default. The individual Defendants, and each of them, by their words and/or the own conduct, participated in one or more conspiracies violating one or more of Plaintiffs own Fourteenth Amendment rights for the purpose of vacating a twenty million dollar default that Plaintiff obtained. Defendant City, through the City attorney's office and its designated policymakers or one of them, with actual consent, and conspired with each of the Defendants.

104. The Defendants, and each of them designed a scheme and plan to then frame Plaintiff for a crime that never occurred that the Defendants knew it did not occur, and each of the Defendants agreed to commit fraud, perjury, and other crimes in order for the conspiracy to form. The Defendants, and each them were personally in agreement with the conspiracy and participated to the fullest extent.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Anthony Oliver prays for judgment as follows:

1. For compensatory damages from Defendants, jointly and severally in an amount to be proven at trial;

2. For an award of non-economic damages;

3. For an award of punitive damages pursuant to California Civil Code § 3294 against the individual Defendants;

4. In addition to actual damages, statutory damages as allowed by law, including statutory and treble damages under California Civil Code §§52 and 52.1;

5. For costs of suit pursuant to California Civil Code § 1032; and;

6. For any other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

Date: October 5, 2015

ANTHONY OLIVER

By: ______________________

Anthony Oliver, Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, and Federal Rules of Civil Procedure, Rule 38, Plaintiff is entitled to, and demands, a trial by jury.

RESPECTFULLY SUBMITTED,

ANTHONY OLIVER

DATED: October 5, 2015

By: ______________________

Anthony Oliver, Plaintiff

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [X] )
Anthony Oliver

**DEFENDANTS** ( Check box if you are representing yourself [ ] )
County of Los Angeles, et al.,

(b) County of Residence of First Listed Plaintiff: Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: County of Los Angele:
*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.
6320 Canoga Avenue, Suite # 1500
Woodland Hills, California 91367

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [X] **MONEY DEMANDED IN COMPLAINT:** $ 10,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. 1983 - Violation of Civil Rights

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/Etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Org.
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Info. Act
- [ ] 896 Arbitration
- [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- [ ] 153 Recovery of Overpayment of Vet. Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury-Med Malpratice
- [ ] 365 Personal Injury-Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 American with Disabilities-Employment
- [ ] 446 American with Disabilities-Other
- [ ] 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus/Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405 (g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV15-7791

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **QUESTION A: Was this case removed from state court?** ☐ Yes ☒ No | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| | | |
|---|---|---|
| **QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?** ☐ Yes ☒ No | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| | | |
|---|---|---|
| **QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?** ☐ Yes ☒ No | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| If "no, " skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION D: Location of plaintiffs and defendants?** | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. → | ☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ↓ |

| **QUESTION E: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

**QUESTION F: Northern Counties?**

Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? ☐ Yes ☒ No

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**? ☒ NO ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**? ☒ NO ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** DATE: October 5, 2015

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |